UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF LOUISIANA

IN RE:

PATTY N. MERRICK                                             CASE NO.: 04-12488
    DEBTOR

PROVIDENT BANK

VERSUS                                                                                ADV. NO.: 05-1039

PATTY N. MERRICK

**AMENDED MEMORANDUM OPINION**

    I.      Procedural Background

Patty Merrick filed chapter 13 on July 29, 2004. Her case was converted to a chapter 7 liquidation on the debtor's motion on December 14, 2004.

One of Mrs. Merrick's principal creditors is Provident Bank, whose debt is secured by the first mortgage on her residence. Mrs. Merrick scheduled Provident's secured claim at $190,000.00.

Provident filed its complaint against Mrs. Merrick alleging, among other things, that the debtor's obligation to it is not dischargeable under 11 U.S.C. §523(a)(2)(A) and (B). Provident argues that she obtained money from Provident by false pretenses, a false representation, actual fraud and/or use of a materially false statement in writing regarding her financial condition.

The debtor answered the complaint and counterclaimed. Her counterclaim was dismissed before trial.

II.   Facts

This dispute centers on a mortgage Patty Merrick granted on 2439 Yorktown Drive, in Baton Rouge, Louisiana ("Yorktown Property"). Mrs. Merrick obtained her interest in the property from her late husband.

Mr. Merrick unexpectedly died during surgery in 1997. He bequeathed naked ownership of the home to the debtor and his minor son by a former marriage, Brian Landon Merrick,[1] "share and share alike."[2] The will also granted Patty Merrick a lifetime usufruct over all Mr. Merrick's property.

In March 1999, although her late husband's succession remained incomplete and she had not been put into possession of her interest in the Yorktown Property, Mrs. Merrick refinanced the mortgage debt secured by the family home. The debtor borrowed $153,000 from Homegold, Inc. ("Homegold"),[3] and secured the loan by a mortgage on the Yorktown Property.[4] Mrs. Merrick signed a mortgage representing that she was "lawfully seised of the estate hereby conveyed and has the right to mortgage and hypothecate the Property…." She used the proceeds of the mortgage loan to pay off existing mortgage debt and other obligations. Specifically, Mrs. Merrick directed the payment of a number of creditors, including some creditors holding debt incurred before her husband's death, according to the Sworn Descriptive List of Assets and Liabilities in her late husband's succession.[5]

---

[1]  Brian Merrick has since reached majority.

[2]  Last Will and Testament of Ronald Lynn Merrick (Plaintiff's Exhibit 16).

[3]  March 26, 1999 note by Patty Merrick in favor of Homegold, Inc. (Plaintiff's Exhibit 13).

[4]  March 26, 1999 mortgage by Patty Merrick in favor of Homegold, Inc. (Plaintiff's Exhibit 14).

[5]  Sworn Descriptive List of Assets and Liabilities in Succession of Ronald Lynn Merrick, Probate No. 65,374-A in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana (Plaintiff's Exhibit 20).

Homegold later assigned its interest in the note and mortgage to plaintiff Provident Bank ("Provident").

In fact, in 1999 Mrs. Merrick could not have mortgaged the property legally without a court order, because the property belonged to her late husband's succession, and the state court had not rendered a judgment of possession.[6]

Mrs. Merrick stopped making payments on the mortgage loan some time in 2002. Provident has filed a proof of claim for $205,315.84.

III.  Analysis

   a.  Claim under 11 U.S.C. §523(a)(2)(A)

To succeed under section 523(a)(2)(A), Provident Bank must prove that: (1) the debtor made representations; (2) at the time the representations were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the bank; (4) the bank relied on the representations; and (5) the bank sustained losses as a proximate result of the representations.  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

Debts falling within the ambit of section 523(a)(2)(A) are those obtained by fraud "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made."  *In re Martin*, 963 F.2d 809, 913 (5th Cir. 1992) (citation omitted). Although intent to deceive may be inferred from a "reckless disregard for the truth or falsity of a statement . . . ," *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005), a debtor's "honest belief, even if unreasonable, that a representation is true and that the [debtor] has information to justify it does not amount to an intent to deceive."  *Id.*

---

[6]  Exhibits 20a & 20b (succession record); La. Code Civ. Pro. art. 2951.

Mrs. Merrick testified that a representative of Homegold contacted her by telephone and said the company could help her with her finances. Homegold asked for a copy of her husband's will, bank statement, marriage license, birth certificates, and information concerning her job. Some time thereafter (and about two weeks before the loan closing), Homegold contacted Mrs. Merrick to confirm a closing date and location. Later she signed the closing documents at the office of a Baton Rouge lawyer. At the closing, she again provided copies of the documents she already had given Homegold. Mrs. Merrick testified that no one from Homegold ever asked her to provide more documentation.

Provident offered no conflicting testimony concerning the circumstances under which it made the loan, or any independent evidence of any alleged misrepresentations the debtor made to Homegold.[7] Thus, Mrs. Merrick's version of events is largely uncontradicted, albeit subject to the court's assessment of her credibility.

Mrs. Merrick is well educated. She holds a master's degree, and lacks only 21 credit hours to obtain a doctorate in education. She has worked for the East Baton Rouge Parish School Board in different capacities for more than twenty-three years.

Mrs. Merrick claimed that when she mortgaged the home, she did not know that her stepson Brian had inherited a one-half interest in the property under her late husband's will. Her testimony on this point is not credible, given that Mrs. Merrick was the executrix of her late husband's succession, was familiar with his will, and knew – or should have known – that she had no right, acting alone, to encumber or dispose of the property.

Though at trial Mrs. Merrick insisted that she based her understanding on her late husband's explanation of the provisions of his will, and that she believed she obtained a "life

---

[7] Provident offered no proof of the contents of the loan application, or any written evidence supporting its claim that the debtor misrepresented anything to Homegold – apart from the mortgage, discussed below.

estate" in the property, her schedules acknowledged under penalty of perjury that the debtor co-owned the house with her stepson, and that each owned a half interest in the property.[8]

Mrs. Merrick insisted on cross-examination during her case in chief that she never claimed she owned the property outright. However, she also admitted on cross-examination that she understood that she was mortgaging the entire property, and acknowledged that the lender would not have given her the loan without obtaining a mortgage against the entire property.

Regardless of what Mrs. Merrick may have represented to Homegold during the application process, the evidence supports a finding that she misrepresented the extent of her ownership in the property as of the closing. Specifically, she signed the mortgage declaring that she was "lawfully seised of the estate hereby conveyed and has the right to mortgage and hypothecate the Property…." The evidence established that Mrs. Merrick did not have the right to mortgage the property, and before the closing, knew – or should have known – that she was not able to do so.

However, this finding and conclusion alone is not the end of the inquiry. Bankruptcy Code section 523(a)(2)(A) also requires a creditor's *justifiable* reliance on the debtor's representation. *Field v. Mans*, 516 U.S. 59, 76, 116 S. Ct. 437, 446 (1995). Justifiable reliance is gauged by an individual standard of the creditor's own capacity and knowledge, or the knowledge that may fairly be charged against him from facts he can observe. *In re Vann*, 67 F.3d 277, 281 (5th Cir. 1995). When relevant facts should have been readily apparent to the creditor, or the creditor learned facts that should have served as a warning of the debtor's deception, then its reliance may not be justifiable and the creditor must investigate the facts independently. *Id.*

---

[8] Of course, the schedules were prepared long after the mortgage loan closing. In any case, the debtor still insisted at trial that she held a usufruct on the property.

Provident claims it had no duty except to rely upon the explicit representations set forth in the Note and Mortgage.

Mrs. Merrick testified that she gave a copy of Ronald Merrick's will to Provident's predecessor, Homegold. Ronald Merrick's succession had been opened at the time Mrs. Merrick applied for the mortgage loan,[9] and Provident easily could have inspected the state court succession record. Despite that, Homegold imprudently extended credit to the debtor in reliance on a mortgage that could not be valid in the face of uncontradicted evidence that its borrower had furnished documentation (her husband's will) that should have put Provident on notice that she lacked the power, acting alone, to grant a mortgage on the property to serve as collateral for the loan.

Provident's post-trial memorandum quotes extensively from *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437 (1995). The bank predictably relies on the Supreme Court's citation to an example in the Restatement (Second) of Torts of a seller who claims his property is free of encumbrances. In *Field*, the Supreme Court explained that the "contrast between justifiable reliance and a reasonable reliance is clear: 'Although the plaintiff's reliance on the misrepresentation must be justifiable… this does not mean that his conduct must conform to the standard of the reasonable man." *Id.* at 71-72 (quoting Restatement (Second) of Torts §545A) (ellipses in original). The Court held that a creditor is justified in relying on a representation of fact even though a reasonable investigation may have brought the misrepresentation to light. *Id.* at 71-72, 116 S. Ct. at 444-445.

The facts here differ, and the distinction is crucial. The debtor may have signed a mortgage indicating that she had the power to mortgage the property, and thereby misrepresented that she owned the property outright. However, the record contains no evidence that the debtor

---

[9] The evidence established that the succession remained open at the date of trial.

- 6 -

told Homegold anything untruthful about her interest in the property *before* she signed the mortgage, thereby inducing them to continue with the transaction. In fact, the only evidence in the record shows that before the transaction was consummated Mrs. Merrick gave Homegold her late husband's will, which specifically indicated that she was to inherit only a partial interest in the property. Provident did not establish any different facts. The record established that Homegold did indeed have information in the nature of "warning signs" that Mrs. Merrick did not own the property outright, before it made the loan. *Compare Sanford Institution for Savings v. Gallo*, 156 F.3d 71, 73 (1st Cir. 1998) (bank entitled to rely on borrower's statements absent warning signs of their falsity); *In re Mulder*, 306 B.R. 265 (N.D. Iowa 2004) (bank entitled to rely on borrower's statement of ownership in the absence of warning signs that the statements were untrue).

Homegold, Provident's predecessor, was in the business of making mortgage loans. Its reliance solely on the debtor's representations concerning her ownership of the property to be mortgaged, without verifying her ownership of the property, is astounding. The debtor testified that she twice provided a copy of her husband's will to Homegold: once before the closing, and again at the closing. Provident did not prove otherwise. If the will itself were not sufficient to put the lender on notice that the debtor may not have owned the property outright, Homegold should have been on notice of the need to review the public record to determine the status of the late Mr. Merrick's succession. Provident offered absolutely no evidence that Homegold checked the public record before closing the mortgage loan.

Thus, although Mrs. Merrick misrepresented her ability to mortgage the property in the actual act of mortgage, Provident offered no evidence to suggest that she said or did anything that would have entitled it justifiably to rely on her representation in the mortgage.

b.  Claim under 11 U.S.C. §523(a)(2)(B)

In order to succeed under section 523(a)(2)(B), Provident Bank must prove by a preponderance of the evidence that: (1) the debtor made a statement in writing; (2) the debtor's statement was materially false; (3) the statement was about the debtor's or an insider's financial condition; (4) the bank reasonably relied upon the debtor's written statement; and (5) the debtor made the false written statement with the intent to deceive. *In re Cohn*, 54 F.3d 1108 (3$^d$ Cir. 1995). The "reasonable" reliance required by this section and the "justifiable" reliance described by the Supreme Court in *Field v. Mans* in connection with section 523(a)(2)(A) differ. Reasonable reliance is a more exacting standard than justifiable reliance, and focuses on whether the creditor's reliance would have been reasonable to a hypothetical average person. *Field v. Mans,* at 445; *Collier on Bankruptcy*, 15th Edition Revised ¶523.08[1][d].

The record and the discussion in subsection "a" of this opinion make further analysis of Provident's claims unnecessary. Provident offered no evidence to support a finding and conclusion that Homegold was either justified or reasonable in its reliance on the debtor's representations. Homegold had adequate notice that the debtor may not have owned the collateral outright. Because Provident did not prove that Homegold's reliance met the "justifiable reliance" standard, *a fortiori* Homegold's reliance also did not meet the higher standard, reasonable reliance, required for nondischargeability under 11 U.S.C. §523(a)(2)(B).

IV.  Conclusion

Provident established that Patty Merrick misrepresented that she was seised of the property at 2934 Yorktown Drive, and therefore misrepresented her ability to grant a mortgage on that property. However, Provident neither justifiably nor reasonably relied on Mrs. Merrick's misrepresentation. Mrs. Merrick provided to Homegold, Provident's predecessor in interest,

enough information to put Homegold on notice that Mrs. Merrick alone likely did not have the power to mortgage the property.

Provident has not established that its claim against Merrick is nondischargeable under 11 U.S.C. §523(a)(2)(A) or (B). Its complaint will be dismissed.

Baton Rouge, Louisiana, August 11, 2006.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE